In the Matter of TEJAS DRILLING COMPANY, Debtor.

TEJAS DRILLING CO. and Greycas, Inc., Appellants,

v.

DEL INTERNATIONAL, INC., Appellee.

No. 88–2017.

United States Court of Appeals, Fifth Circuit.

July 11, 1988.

Rehearing and Rehearing En Banc Denied Aug. 10, 1988.

William V. Walker, Houston, Tex., for Tejas Drilling.

Pamela A. Prestridge, Hirsch & Westheimer, Houston, Tex., for Greycas, Inc.

Nelson J. Schexnayder, Jr., Hawley & Schexnayder, Lafayette, La., for appellee.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Tejas Drilling Company and Greycas, Inc. challenge the bankruptcy court's and the district court's conclusion that Del International, Inc. has a valid vendor's lien in an oil and gas rig. The appellants argue that the courts erred in failing to find that Del's lien never was created, that Del waived its lien if it was created, that Del was estopped from asserting the lien if it existed, that any creation of the lien amounted to a fraudulent transfer, and that any rights Del had in the lien should be equitably subordinated to Greycas' rights. We assume for the purposes of this opinion that Del's lien was created at the time of the sale of the rig, but we reverse and hold that Del waived its lien. Because of this disposition, we need not address the appellants' other arguments.

### I.

Tejas Drilling Company is the debtor in a Chapter 11 bankruptcy case. Greycas, Inc. and Del International, Inc. are creditors who both claim the superior lien on an oil and gas rig purchased by Tejas from Del.

In October 1981, Tejas, in its capacity as a general partner in a partnership, contracted to purchase an oil and gas rig from Del. The deal was to close on December 31, 1981. There were to be three sources of funds to pay for the rig: (1) Greycas was to provide $3,948,000, secured by a first lien (promissory note and chattel mortgage) on the rig; (2) Allied Bank of Texas was to provide $750,000; and (3) 22 units of the Partnership were to be sold at $100,000 each. For Allied to release its funds, however, all 22 partnership units had to be sold.

The purchase contract called for Tejas to make periodic payments, which it failed to make. Thus, Tejas and Del amended the contract to provide for Tejas to pay interest on the late payments. Prior to the date of the sale, Tejas had paid $375,000; however, on December 31 the accumulated unpaid interest totalled $78,413.27. To work through the financial problems, Del acquired one Partnership unit in exchange for a $50,000 credit on the rig purchase price and a $50,000 letter of credit.

Shortly before the date of the sale, the funding for the purchase money was as follows:

| | |
|---|---|
| Purchase Price (including interest) | $5,953,413.27 |
| Cash Prepayments | (375,000.00) |
| Credit from Del | (50,000.00) |
| Due at Sale | 5,528,413.27 |
| Cash at Sale | (75,000.00) |
| Funding from Greycas | (3,948,000.00) |
| Funding from Allied Bank | (750,000.00) |
| Sale of Partnership Interests | (250,000.00) |
| Due at Sale but not funded | 505,413.27 |

As is apparent from this chart, Tejas was short of cash by $505,413.27 from meeting the sales price. The shortfall existed because Tejas had failed to sell all of the Partnership interests. Tejas and Del thus renegotiated the contract and reduced the price by $155,413.27 leaving Tejas only $350,000 short. In a key finding of fact, the district court found: "Negotiations for payment of the remaining $350,000 continued until December 31, 1981, when Del agreed to accept from Tejas a $350,000 note and the income potential of three and one-half [Partnership units] in lieu of the $350,000 cash."

On December 31, the sale was consummated by placing the following items into escrow:

BY DEL:
 The Bill of Sale

BY TEJAS:

| | |
|---|---|
| A check– | $75,000.00 |
| Promissory Note 1 from Tejas to Del– | 3,948,000.00 |
| Promissory Note 2 from Tejas to Del– | 750,000.00 |
| Promissory Note 3 from Tejas to Del– | 250,000.00 |
| Promissory Note 4 from Tejas to Del– | 505,413.27 |

On January 6, 1982, Greycas paid $3,948,-000 to Del. This money was paid in part by a check payable to Del, and in part by

two checks payable to various banks holding superior chattel mortgages on the rig. As a result of this payment, Promissory Note 1 was returned to Tejas. All of these checks from Greycas were delivered to a representative of Del, who then arranged for the delivery of the checks to the various banks and for the cancellation of their chattel mortgages.

On January 7, Allied Bank paid to Del $750,000, and Promissory Note 2 was returned to Tejas. At the same time, Del received the $75,000 check from escrow. Promissory Note 3 was returned to Tejas when the partners of the Partnership paid Del $250,000. Finally, Promissory Note 4 was replaced with a $350,000 note, reflecting the negotiated price decrease, and Del received "the income potential of three and one-half units" of the Partnership. Tejas never made any payments on the $350,000 note to Del.

Tejas defaulted on its debt to Greycas on March 11, 1982. Greycas filed suit in Louisiana, where the rig was located. On May 6, 1982, judgment was rendered for Greycas for $4,160,214.21. On May 6, 1982, Tejas filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. On May 19, 1982, Del intervened in the Louisiana action, asserting that Tejas owed it $350,000 plus interest and attorneys' fees. Del claimed it had a vendor's lien in the rig and that its interest was superior to Greycas'. On July 18, 1982, the Bankruptcy Court lifted the stay to allow Greycas to enforce its lien on the rig. On August 12, 1982, Del asserted a claim in the Bankruptcy Court for $424,371.46, plus attorneys' fees and costs, claiming a security interest in the rig or the proceeds of its sale. On August 31, Tejas and Greycas filed an adversary proceeding in the Bankruptcy Court against Del to determine the priority of the liens in the rig.

On July 12, 1984, Judge Peden, in his capacity as a magistrate, recommended findings of fact and conclusions of law. Judge Bue signed these findings, holding that Del had a vendor's lien that was superior to Greycas' chattel mortgage. Judgment was entered in the Bankruptcy Court

on August 24, 1984. Tejas and Greycas appealed to Judge Sterling's District Court, and on December 9, 1987, Judge Sterling affirmed the judgment of the Bankruptcy Court. Tejas and Greycas now appeal that affirmance.

## II.

A vendor's lien in Louisiana arises when one sells property without receiving the full purchase price. More specifically, Louisiana law provides:

> He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser.

> So that although the vendor may have taken a note, bond or other acknowledgment from the buyer, he still enjoys the privilege.

La.Civ. Code Ann. art. 3227. A vendor's lien is superior to a chattel mortgage, *Mitsubishi International Corp. v. Clark Pipe and Supply Co.*, 735 F.2d 160, 167 (5th Cir.1984), and is a secured claim in bankruptcy that does not require filing to have priority. *Explorer Drilling Co. v. Martin Exploration Co. (In re Martin Exploration Co.)*, 731 F.2d 1210 (5th Cir.1984); *Borg–Warner Acceptance Corp. v. Tape City U.S.A., Inc. (In re Tape City, U.S.A., Inc.)*, 677 F.2d 401 (5th Cir.1982). The seller has the burden of proving the existence of the lien. *Warren Refrigerator Co. v. Fosti Midstream Fueling and Service, Inc.*, 462 So.2d 1343, 1347 (La.Ct.App.1985).

The bankruptcy and district courts found that Del had proven the existence of a vendor's lien. They found that the $350,000 note was part of the purchase price; because the note was not paid, the lien attached.

Tejas and Greycas first contest the courts' conclusion that the $350,000 note was part of the purchase price. They argue that the note arose in a transaction completely separate from the sale of the rig. In essence, they argue that Del took the partnership interests as part of the

purchase price and then, in a separate transaction, took the note as a repayment of the capital invested in the partnership interests.

We need not address this argument, however, because we hold that even if a vendor's lien was retained, Del waived the lien. Article 2(b) in the Agreement of Purchase and Sale for the rig provided:

Builder will, upon Acceptance, have good and marketable title to the Rig, and, except as provided in Exhibit "C", such Rig shall be free and clear of any and all security interests, mortgages, privileges, liens, other encumbrances and claims of any person whatsoever, known or unknown, absolute or contingent.

Also, Article 5.01(c) of the Agreement provided:

The Rig purchased hereunder shall be free and clear of any and all mortgages, privileges, liens, claims and other encumbrances, except as provided in Exhibit "C", satisfactory to Purchaser.

There was no Exhibit "C." The Bill of Sale also contained a like provision.

The bankruptcy and district courts concluded that Del did not waive its vendor's privilege. They found that Del intended to and did warrant good title to the rig and that all claims against the rig had been paid. This warranty, they found, did not include a waiver of Del's vendor's privilege, because the privilege arose automatically at the sale from the failure of Tejas to pay the full purchase price. These conclusions, which construe the legal effect of the contractual language, are legal conclusions subject to *de novo* review. *See Southwest Industrial Import & Export, Inc. v. Wilmod Co.,* 524 F.2d 468, 470 n. 3 (5th Cir. 1975) (per curiam) ("[W]aiver [is] a conclusion of law not subject to the strictures of limited review dictated by F.R.Civ.P. 52(a) as to factual findings of the Trial Court.").

A vendor's lien may be expressly waived. Alternatively, a waiver may be implied from the terms of an instrument. *Sam Smith & Co. v. City of New Orleans,* 27 La.Ann. 286, 287 (La.Ct.App.1875). We think that a general statement that there are no liens suffices to waive the vendor's lien. A statement expressly renouncing a "vendor's lien" would be redundant given the waiver of "all liens." It is true that in the absence of any language of waiver, no contractual provision is required for the retention of a vendor's lien. Nevertheless, to reserve a vendor's lien when the contract expressly says that no liens exist, one must include an expression that the general language does not apply to vendor's liens. To hold otherwise would lay a trap for the unwary. The parties have cited no Louisiana law compelling a different result, and we therefore hold that Del waived any vendor's lien that might have existed.

### III.

For the reasons stated in this opinion, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.